**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| 1500 NET-WORKS ASSOCIATES, L.P., Plaintiff, v. EDUCATION EQUITIES FUND LLC, JOSHUA FIGULI AND DAVID FIGULI, Defendants. | : | CIVIL ACTION NO. 2:24-cv-02254-PD |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF DEFENDANT EDUCATIONAL EQUITIES FUND TO VACATE DEFAULT JUDGMENT**

In 2017, plaintiff 1500 Net-Works Associates, L.P., owner of the building known as and located at 1500 Spring Garden Street in Philadelphia, leased 32,771 square feet of office space to Hussian College, Inc. ("Hussian"). Defendants Education Equities Fund, LLC ("EEF"), Joshua Figuli, and David Figuli executed written guaranty agreements in which they jointly, severally, and unconditionally guaranteed all of Hussian's obligations under the Lease.

After Hussian defaulted under the Lease, Plaintiff filed two confession of judgment actions (one for money, one for possession) against Hussian. Plaintiff also filed this action (in the Court of Common Pleas) against the guarantors.

After (i) Plaintiff's attempt to serve process on EEF by certified mail at the Colorado address listed in EEF's written Lease Guaranty failed because the certified mail package went undelivered and unclaimed and (ii) Plaintiff determined (based on a report from a Colorado process server) that personal service could not be made at that Colorado address, Plaintiff made service on EEF's registered agent in Delaware (Corporation Service Company) in accordance with Pa. R.C.P. 424 (service upon corporations and similar entities).

EEF failed to file a responsive pleading within 20 days of service, so on March 14, 2024, Plaintiff served EEF with a Notice of Praecipe to Enter Default Judgment via certified mail to EEF's registered agent. Once again, EEF failed to respond. On April 8, 2024, Plaintiff filed a Praecipe to Enter Judgment by Default against EEF and the Court of Common Pleas entered a default judgment in the amount of $8,026,177.68 against EEF.

Defendants removed this action on May 28, 2024, and EEF is now asking this Court to vacate the default judgment entered by the Court of Common Pleas. In evaluating such motions, the Court must consider three factors - - (i) whether the plaintiff will be prejudiced if the default judgment is set aside, (ii) whether the defendant has a meritorious defense, and (iii) whether the default was the product of the defendant's culpable conduct. U.S. v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir.1984)(citations omitted). The "meritorious

defense" factor is considered the "threshold question," since "there would be no point in setting aside the default judgment and remanding for a ... hearing [on the merits] if [the moving party] could not demonstrate the possibility of his winning." Id. To establish a meritorious defense, the "allegations of defendant's answer, if established on trial, would [have to] constitute a complete defense to the action." Id. (citations omitted).

Here, EEF has not identified any purported defense that, if proven, would constitute a complete defense to Plaintiff's claim. Moreover, EEF has not offered even one possibly legitimate excuse for its failure to respond to Plaintiff's Complaint or Notice of Praecipe to Enter Default Judgment. Indeed, EEF does not deny that Corporation Service Company is its registered agent; nor does EEF claim that its registered agent failed somehow to send it the Complaint and other documents. Accordingly, EEF's Motion to Vacate should be denied.

## FACTUAL BACKGROUND

### A. Plaintiff's Lease With Hussian

Plaintiff is the owner of the building known as and located at 1500 Spring Garden Street, Philadelphia, Pennsylvania. [Complaint, ¶ 6.] Plaintiff and Hussian College, Inc. entered into an Agreement of Lease, dated May 16, 2017, pursuant to which Hussian leased approximately 32,771 square feet on the first

floor of the building. [Complaint, ¶ 6 and Exhibit A-1.] The natural term of the Lease was not to expire until April 30, 2030. [Complaint, ¶ 11.] [1]

### B. EEF Unconditionally Guarantees Performance Of Hussian's Obligations Under The Lease

Pursuant to paragraph 30 of the Lease and a written Lease Guaranty dated May 5, 2017, EEF unconditionally guaranteed Hussian's performance of all obligations under the Lease. [Complaint, ¶¶ 12-15 and Exhibit B (EEF's executed Lease Guaranty), ¶¶ 1, 6.] This included guaranteeing the payment of Hussian's "Monetary Obligations," defined as "all rent, late charges, interest, taxes, utility charges, insurance premiums and all other charges, expenses and amounts payable by Tenant to Landlord pursuant to the Lease Documents." [Complaint, Exhibit B (EEF's executed Lease Guaranty), Recital C.] Thus, EEF guaranteed the payment of all amounts owed by Hussian under the Lease.

EEF further agreed that it would pay all reasonable costs and expenses incurred by Plaintiff in enforcing Plaintiff's rights under the Lease or EEF's Lease Guaranty and waived all notice requirements with respect to the Guaranty.

[1] The Lease was amended by a Letter Agreement dated June 5, 2017, a First Amendment dated June 29, 2020, a Second Amendment dated November 27, 2020, and a Third Amendment dated December 15, 2022. [Complaint, ¶ 6 and Exhibits A-2 through A-5.]

[Complaint, ¶¶ 16-17 and Exhibit B (EEF's executed Lease Guaranty), ¶¶ 3, 5, 21.][2]

The Lease Guaranty described EEF as a "Delaware limited liability company located at 8697 S. Blue Creek Road, Evergreen, Colorado 80439." [Complaint, Exhibit B (p. 1).] Defendant Joshua Figuli executed the Lease Guaranty on behalf of EEF in his capacity as EEF's "Member and Manager." [Complaint, Exhibit B (p. 8).][3]

### C. Hussian Defaults On Its Obligations Under The Lease

In the spring of 2023, Hussian ceased making the payments required by the Lease and thus was in default. [Complaint, ¶¶ 24-25.] Additionally, Hussian abandoned the leased premises as of on or about May 30, 2023. [Complaint, ¶ 32.] This also constituted a default under the Lease. [Complaint, ¶ 31.]

As required by paragraph 21 of the Lease, Plaintiff served a Five Day Notice of Default on Hussian on June 9, 2023. [Complaint, ¶ 26 and Exhibit D.]

---

[2] EEF reaffirmed, restated, and ratified its guaranty obligations in each of the Amendments to the Lease. [Complaint, ¶ 18 and Exhibits A-3 (¶ 6), A-4 (¶ 6), and A-5 (¶ 7).]

[3] Pursuant to the Third Amendment to the Lease and a separate written Guaranty, defendants Joshua Figuli and David Figuli, in their personal capacities, likewise jointly, severally, and unconditionally guaranteed Hussian's obligations under the Lease. [Complaint, ¶ 19 and Exhibits A-5 and C.]

The cover letter for the Notice of Default was addressed to Alan Fellheimer, Esquire, who was counsel for Hussian at that time, and the cover letter along with the Notice of Default itself were sent to EEF and the other guarantor defendants by email, certified mail, and Federal Express. [Complaint, Exhibit D.] Neither Hussian nor Defendants cured Hussian's lease defaults. [Complaint, ¶¶ 29-30.]

The "Remedies" section of the Lease gave Plaintiff a host of options in the event of a tenant default, including, inter alia, (i) recovery of "[t]he whole balance of rent, charges and all other sums payable hereunder, whether or not payable as rent, for the entire balance of the Term" and (ii) terminating the Lease. [Complaint, ¶ 9 and Exhibit A-1 (¶ 21).]]

Plaintiff elected to terminate the Lease. On July 31, 2023, Plaintiff issued a Notice of Termination to Hussian. [Complaint, ¶ 34 and Exhibit E.] The Notice of Termination was sent to Mr. Fellheimer as counsel for Hussian and to EEF and the other guarantor defendants by email, certified mail, and Federal Express. [Complaint, Exhibit E.]

As expressly permitted by paragraph 21(a)(1) of the Lease, Plaintiff also elected to accelerate the whole balance of rent, charges, and other sums payable by Hussian to Plaintiff under the Lease for the entire balance of the Lease's natural term, which extended to April 30, 2030. [Complaint, ¶ 40 and Exhibit A-1 (Lease), ¶ 21.]]

## D. Plaintiff's Damages For Hussian's Lease Default

EEF asserts that Plaintiff's damages are not for a sum certain or for a sum that could be made certain by calculation. [EEF's Memorandum of Law, p. 10.] As a factual matter, EEF is mistaken.

At the time the Lease was terminated, Hussian owed $447,867.31 in past-due rent ("arrears"). [Complaint, ¶ 42.] In addition, accelerated rent for the balance of the Lease's natural term, through April 30, 2030, amounts to $7,196,111.43; this calculation is shown in great detail in the schedule attached to the Complaint. [Complaint, ¶ 41 and Exhibit G.] Thus, the total principal amount due to Plaintiff is $7,643,978.74 (arrears of $447,867.31 + accelerated rent of $7,196,111.43). [Complaint, ¶ 42.]

The Lease (paragraph 22) expressly entitles Plaintiff to an attorney's commission of five percent (5%) on all amounts due under the Lease. [Complaint, ¶ 44 and Exhibit A-1 (¶ 22(e)(1)).] The attorney's commission is $382,198.94 (5% x $7,643,978.74 = $382,198.94), bringing the total due and owing for Hussian's lease default to $8,026,177.68. [Complaint, ¶ 45.]

## E. Plaintiff Files This Action Against The Guarantors And Attempts To Serve Process On EEF

Plaintiff filed this action against Defendants on January 5, 2024 in the Court of Common Pleas of Philadelphia County. Plaintiff also filed confession of

judgment actions (one for money, one for possession) against Hussian in the Court of Common Pleas (case nos. 240100531 and 240100685).

After filing this action, Plaintiff proceeded to attempt service of the Notice to Defend and Complaint on EEF and the individual defendants. As was noted above, EEF's Lease Guaranty stated that EEF was located at 8697 S. Blue Creek Road, Evergreen, Colorado 80439. [Complaint, Exhibit B (EEF's executed Lease Guaranty), p. 1.] That address is also the address listed for defendant David Figuli in the Guaranty that he executed. [Complaint, Exhibit C (Guaranty), ¶ 13; Praecipe to Substitute Exhibit C to Complaint (¶ 13).]

On January 11, 2024, Plaintiff sent the Complaint and Notice to Defend to EEF at its Colorado address via certified mail, return receipt requested (USPS tracking no. 9414726699042223830667) pursuant to Pa. R.C.P. 403 and 404. [See January 11, 2024 letter with certified mail receipts (attached hereto as Exhibit 1).] The United States Post Office ("USPS") attempted to deliver the package on January 16, 2024, but found the recipient (EEF) unavailable and therefore left a notice advising EEF that the package was ready for pick-up at 1222 Bergen Parkway, Evergreen, Colorado 80439. [See USPS tracking print-out (attached hereto as Exhibit 2).] On March 9, 2024, the USPS marked the certified mail package unclaimed and returned it to Plaintiff's counsel. [Id.]

Around the same time as the failed attempt to serve EEF by certified mail, Plaintiff retained a process server in Colorado to attempt personal service of the Complaints against Hussian on David Figuli (as a corporate officer of Hussian) at the same Colorado address designated as EEF's address. The Colorado process server made two attempts at personal service (January 19 and 22, 2024), but was unsuccessful both times as the property is a large, fenced property with a locked gate, no structures visible from the gated entrance, and no callbox or buzzer to contact the occupants of the property. [See Affidavit of Amanda Dougherty (attached hereto as Exhibit 3).] Plaintiff concluded from this report that it would not be able to make personal service on EEF at the Colorado address.

Also in January 2024, Plaintiff's counsel learned that Joshua Figuli, David Figuli, and Hussian were defendants in an action pending in the U.S. District Court for the Eastern District of New York captioned *Velocity Capital Group LLC v. Hussian College, Inc., et al.,* Case No. 23-CV-05562 (the "EDNY Action"). In that action, Joshua Figuli had filed a Rule 7.1 statement stating that he resides at "1040 Ellis Avenue, San Jose, California." [See Defendants' Rule 7.1 Statement (attached hereto as Exhibit 4).] Plaintiff therefore decided to attempt service on Joshua Figuli and EEF (through Mr. Figuli, its manager and member) at the San Jose address. Plaintiff engaged a process server in San Jose who visited the San Jose address on January 24, 2024; the process server encountered a male who

advised the process server that Joshua Figuli was the prior owner of the house, that he had purchased the house from Joshua Figuli in 2021, and that Joshua Figuli did not reside there. [See Affidavit of George Franco (attached hereto as Exhibit 5).] Thus, Plaintiff was unsuccessful in its attempt to serve EEF and Joshua Figuli at the 1040 Ellis Avenue, San Jose, California address listed in Mr. Figuli's Rule 7.1 statement.

The court docket for the EDNY Action showed that Joshua Figuli and David Figuli were represented by attorney Jeffrey M. Greilsheimer. On January 26, 2024, Plaintiff's counsel telephoned Mr. Greilsheimer, advised him of, inter alia, the Complaint in this action and Plaintiff's unsuccessful attempts at service thus far, and asked whether he would accept service on behalf of Joshua Figuli, David Figuli, and EEF. [See Affidavit of Kenneth Eng, Esq. (attached hereto as Exhibit 6), ¶ 21.] Mr. Greilsheimer requested a copy of the Complaint and advised that he would ask his clients whether he could accept service of the Complaint. [Id.] Plaintiff's counsel sent Mr. Grelsheimer a copy of the Complaint on January 26, 2024. [Id., ¶ 22.] On January 28, 2024, Mr. Greilsheimer advised Plaintiff's counsel that he was not authorized to accept service of the Complaint. [Id., ¶ 23.]

### F. Plaintiff Makes Service On EEF Through Its Registered Agent For Service Of Process In Delaware

EEF relies on the Declaration of David Figuli to support its Motion to Vacate. [EEF's Memorandum of Law, Exhibit C.] In his Declaration, David

Figuli notes that he is an attorney (¶ 1) and then states, among other things:

> 4. Plaintiff served EEF with the filing of the Complaint in the Philadelphia Case by publication in the *Philadelphia Inquirer*, a newspaper of limited circulation which does not include regular circulation in California or Colorado.
>
> 5. Neither EEF nor any of its members regularly subscribe to nor read the *Philadelphia Inquirer*.

These declarations by Mr. Figuli are false, as Plaintiff did not serve EEF by publication in a newspaper.

EEF's executed Lease Guaranty stated that EEF is a Delaware limited liability company, and Plaintiff determined from the Delaware Secretary of State records that EEF had appointed Corporation Service Company in Wilmington Delaware as its registered agent. [See Delaware Secretary of State record (attached hereto as Exhibit 7).] Plaintiff engaged a process server who personally served the Complaint on EEF through its registered agent on February 7, 2024. [See Affidavit of Michael Powers (attached hereto as Exhibit 8).]

Under the Pennsylvania Rules of Civil Procedure, EEF had 20 days in which to respond to the Complaint. EEF failed to respond, so on March 14, 2024, Plaintiff served EEF with a Notice of Praecipe to Enter Default Judgment (copy attached hereto as Exhibit 9). Service of the Notice was made via certified mail to EEF's registered agent for service of process. [Id.]

Once again, EEF failed to respond. On April 8, 2024, Plaintiff filed a Praecipe to Enter Judgment by Default against EEF and served the Praecipe on EEF by U.S. mail to its registered agent. [See Praecipe to Enter Judgment (copy attached hereto as Exhibit 10).] On that same date, the Court of Common Pleas entered a default judgment in the amount of $8,026,177.68 against EEF. [See Court of Common Pleas docket (copy attached hereto as Exhibit 11).] [4]

## ARGUMENT

When a federal court is asked to vacate a default judgment entered by a state court prior to removal, the court applies the federal standard for vacating a default judgment. Pennsylvania Nat. Bank & Tr. Co. v. Am. Home Assur. Co., 87 F.R.D. 152, 154 (E.D. Pa. 1980)( "The federal court tests the removed default judgment by the same legal standard used for ones entered in the federal forum.")

As was noted above, the federal standard employs a three-part test - - (i) whether the plaintiff will be prejudiced if the default judgment is set aside, (ii) whether the defendant has a meritorious defense, and (iii) whether the default was the product of the defendant's culpable conduct. $55,518.05 in U.S. Currency, 728

[4] Plaintiff went to extreme lengths in attempting to serve process on the Figuli defendants. All attempts were unsuccessful, so Plaintiff was forced to file a Motion for Leave for Special Service of Process on those defendants. The Motion was filed on April 24, 2024 and was granted by the Court of Common Pleas on May 6, 2024 (with an amended Order entered on May 15, 2024). After that, Mr. Fellheimer entered his appearance for Defendants.

F.2d at 195 (citations omitted). Of these factors, the "meritorious defense" factor is the most important, described as the "threshold factor." Id.

### A. EEF Has Not Proffered A Meritorious Defense To Plaintiff's Claim

To demonstrate a meritorious defense, the moving party must present allegations that, if accepted at trial, would constitute a complete defense to the plaintiff's claim. $55,518.05 in U.S. Currency, 728 F.2d at 195. The allegations must be of "specific facts beyond simple denials or conclusionary statements." Id. As the Third Circuit has stated:

> In $55,518.05 in U.S. Currency we noted that a defendant does not have the right to have a default judgment set aside automatically upon alleging a defense. Rather, we imposed a more stringent standard which requires that a defendant seeking to set aside a default judgment set forth with some specificity the grounds for his defense. The court must then evaluate that defense to determine whether it is meritorious.

Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d. Cir. 1988).

EEF identifies a number of defenses that it characterizes as "meritorious," but none of them would provide a complete defense to Plaintiff's claim even if accepted at trial.

#### 1. EEF's allegation that the caption of the Complaint does not comply with Pa. R.C.P. 2127

EEF first asserts that Plaintiff did not comply with Pa. R.C.P. 2127 because it did not include the name of Plaintiff's general partner in the caption of the Complaint. [EEF's Memorandum of Law, pp. 12-14.] Plaintiff's general partner

(1500 Spring Garden GP LLC) is specifically identified in paragraph 1 of the Complaint, but was not included in the caption.

EEF's Rule 2127 assertion is not a meritorious defense to Plaintiff's claim because it is not a defense on the merits. Pennsylvania statutory law recognizes that a limited partnership like Plaintiff is an entity distinct from its partners and expressly gives limited partnerships the right to sue in their own names. See 15 Pa. C.S.A. § 8620(a), (d). The limited partnership statute creates substantive rights. Rule 2127, in contrast, is procedural, not substantive. This is demonstrated by the case on which EEF relies for its Rule 2127 argument.

In 1500 Corp. v. Macri Concrete, Inc., 315 A.3d 52, 2024 WL 396462 (Pa. Super. 2024), plaintiff initiated suit by Writ of Summons whose caption identified plaintiff as "1500 SPE, LP." Id. at *1. Over three years later, plaintiff filed a Complaint which identified plaintiff in the caption as "1500 Corporation, trading as 1500 SPE, LP." Id. Defendants filed Preliminary Objections to the change. Id. The trial court sustained the Preliminary Objections, ruling that (i) plaintiff should have been identified in the caption of the Writ of Summons as "1500 Corporation, trading as 1500 SPE, LP," (ii) because it was not listed in the caption of the Writ of Summons, 1500 Corporation could not file a Complaint, and (iii) 1500 Corporation could not be added as a party at that point because the

statute of limitations had expired. Id. The trial court therefore dismissed the case with prejudice. Id. The Superior Court reversed the dismissal.

The Superior Court described Rule 2127 not as a rule creating or limiting substantive rights but as a rule of procedure:

> Rule 2127 recognizes that a limited partnership itself may have the right to prosecute an action, but requires that the caption of the action name the plaintiff as the general partner trading as the limited partnership.

Id. at *3.

The Superior Court next evaluated whether plaintiff should have been allowed to amend the Complaint:

> The question then becomes whether the court erred in dismissing the complaint with prejudice, rather than allowing a second amended complaint pursuant to Rule 1033. Rule 1033 permits a party to add a party to a pleading or to correct the name of a party. Pa.R.C.P. 1033(a). Amendment pursuant to this Rule "should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party." *Piehl v. City of Phila.*, 987 A.2d 146, 154 (Pa. 2009).

Id. In evaluating this issue, the Superior Court likened the lack of technical compliance with Rule 2127 to a "procedural defect" or "technical misstep":

> [A] defendant may not shield itself from prosecution based on a procedural defect in the plaintiff's commencement of an action if the defendant has actual notice of the action before the expiration of the statutory period. *See McCreesh v. City of Phila.*, 888 A.2d 664, 674 (Pa. 2005)("Neither ... cases nor ... rules contemplate punishing a plaintiff for technical missteps where [the plaintiff] has satisfied the

> purpose of the statute of limitations by supplying a defendant with actual notice").

Id.

Finally, the Superior Court held that this "procedural defect" or "technical misstep" was not prejudicial to defendant:

> The lack of prejudice to the defendant under such circumstances becomes even more clear when considering the purpose of Rule 2127. In requiring the individual partners be included as plaintiffs when the partnership prosecutes an action, Rule 2127 protects the defendant's right to execute a favorable judgment on any counterclaims against the general partners. [Citations omitted.] In other words, the Rule prevents the partners from shielding themselves from counter-liability by prosecuting the action in the firm name alone. *See* 15 Pa.C.S.A. § 8645(b) (providing judgment against partnership is not judgment against non-joined partners). In fact, where a plaintiff partnership does not include the names of the partners, in violation of subsection (a), the defendant may petition for their joinder. *See* Pa.R.C.P. 2127(c) ("The failure of a partnership to comply with subdivision (a) of this rule shall not affect the right of the defendant to recover costs from both the partnership and the individual partners").

Id. at *4. The Superior Court concluded that "the trial court erred in dismissing the complaint with prejudice" and on remand should "allow the amendment [to] the caption to conform to Pa. R.C.P. 2127(a)." Id. at *5.

Here, as in 1500 Corp., omission of the name of Plaintiff's general partner from the caption of the Complaint does not provide EEF with a meritorious defense to the claim. Rather, it was a "procedural defect" or "technical misstep" that could have been easily corrected by amendment to the caption of the Complaint had EEF raised the issue in a proper and timely manner instead of

ignoring the Complaint following service. Because there is no statute of limitations problem here, the "procedural defect" or "technical misstep" does "not shield [EEF] from prosecution."

2. **EEF's allegations that Plaintiff failed to comply with Pa. R.C.P. 237.1(a)(2)(ii) and the Prothonotary lacked authority to assess damages**

EEF asserts that Plaintiff did not comply with Pa. R.C.P. 237.1(a)(2) because Plaintiff purportedly did not "mail directly to [EEF] a copy of the Default Judgment Praecipe at least 10 days before filing the Default Judgment Praecipe" and did not "file any certification of such timely directly mailed notice to EEF." [EEF's Memorandum of Law, pp. 14-15.] EEF is mistaken on both counts.

As an initial matter, the word "directly" does not appear in Rule 237.1(a)(2). Thus, the Rule does not say that the Praecipe must be mailed "directly" to the non-responding defendant. Rather, Rule 237.1(a)(2) states that the Praecipe must be "mailed or delivered … to the party against whom judgment is to be entered."

Plaintiff complied with this requirement. Given its previous experience with mailing the Complaint to EEF at its listed Colorado address (i.e., USPS could not make delivery and EEF ignored the USPS notice about picking up the mailing at the nearby USPS office), Plaintiff opted to send its Notice of Praecipe to Enter Default Judgment to EEF's registered agent in Delaware by certified mail. [See Notice of Praecipe (copy attached hereto as Exhibit 9).] Mailing the Notice to EEF's

registered agent complied with Rule 237.1. Scalla v. KWS, Inc., 240 A.3d 131, 134-35 (Pa. Super. 2020)(upholding default judgment where plaintiff's notice pursuant to Rule 237.1 was served on defendant's registered agent in Oklahoma).

Secondly, Plaintiff did indeed file a certification confirming that the Notice of Praecipe was mailed to EEF via its registered agent. Plaintiff's Praecipe to Enter Judgment by Default, filed with the Court of Common Pleas on April 8, 2024, included that Certification. [Praecipe to Enter Judgment (Exhibit 10).]

EEF also argues that the Prothonotary was "without authorization to assess damages for any sum certain or that could have been made certain by computation as required by Pa. R.C.P. 1037(b)(1)." [EEF's Memorandum of Law, p. 15.] As was demonstrated above (p. 8) and in the schedule attached to the Complaint (Complaint, Exhibit G), computation of the sum certain owed by Hussian for its default under the Lease (including the 5% attorneys' fee commission) is straightforward.

EEF next points to the attorneys' fees component of Plaintiff's damages and argues that the Prothonotary was not authorized to award attorneys' fees "because it a) related to an unexercised, irrelevant warranty of attorney for confession of judgment and b) Plaintiff expressly specified in the Complaint's *ad damnum* clause that it sought 'a money judgment … for Plaintiff's attorneys' fees and court costs … **in an amount to be determined by the Court**, as the same continues to accrue.'"

[EEF's Memorandum of Law, p. 16 (emphasis in original).] These arguments miss the mark.

The attorneys' fee commission included in the judgment is part of the damages owed by Hussian for its default under the Lease. The Lease explicitly permitted Plaintiff to confess judgment against Hussian for money damages and receive a 5% attorneys' commission as part of its damages, and that is what Plaintiff did. [Complaint, Exhibit A-1 (Lease), ¶ 21(e)(1).] Because EEF guaranteed payment of all "Money Obligations" owed by Hussian to Plaintiff, EEF is liable for the full amount owed by Hussian, including the attorneys' commission.

As for the fees and costs that are referenced in the Complaint's ad damnum clause and continue to accrue, they are the fees and costs incurred by Plaintiff in pursuing this action. Both EEF and the Figuli defendants are liable for such items pursuant to the written guaranties they executed. [Complaint, ¶¶ 16-17 and Exhibit B (EEF's executed Lease Guaranty), ¶¶ 3, 5, 21; Complaint, ¶ 22 and Exhibit C (Figulis' executed Lease Guaranty), ¶ 6.] Consequently, EEF's allegations of purported non-compliance with Pa. R.C.P. 237.1(a)(2)(ii) and 1037(b)(1) do not present a meritorious defense. [5]

[5] For the same reasons, the judgment entered by the Prothonotary is not "void." In fact, the judgment would not be void even if its entry was erroneous. See, e.g., United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 (2010).

3. **<u>EEF's allegation that the judgment is void because the manager of Plaintiff's general partner is not registered to do business in Pennsylvania</u>**

EEF alleges that the manager (The Nightingale Group, LLC) of Plaintiff's general (1500 Spring Garden GP LLC) "is not a partner of Plaintiff or its general partner and has no standing to prosecute any claims for itself or Plaintiff's general partner as it is not registered to do business in Pennsylvania … and therefore statutorily barred from utilizing the courts in Pennsylvania." [EEF's Memorandum of Law, p. 17.] This allegation about the manager of Plaintiff's general partner is perplexing. It is <u>Plaintiff</u>, not the manager of Plaintiff's general partner, which is prosecuting this action. As was noted above, Pennsylvania statutory law recognizes that a limited partnership like Plaintiff is an entity distinct from its partners and expressly gives limited partnerships the right to sue in their own names. <u>See</u> 15 Pa. C.S.A. § 8620(a), (d). Thus, EEF's allegation about the manager of Plaintiff's general partner does not amount to a meritorious defense.

4. **<u>EEF's allegation that the Complaint is not verified in violation of Pa. R.C.P. 1024</u>**

EEF asserts that the Complaint is "verified by non-party third party, Elshonon Schwartz and is **<u>not verified by Plaintiff</u>** as required by Pa. R.C.P. 1024." [EEF's Memorandum of Law, p. 14-18 (emphasis in original).] Given the signature block in every one of the amendments to the Lease, it is difficult to

understand how EEF in good faith can challenge the validity of Mr. Schwartz's verification of the Complaint on behalf of Plaintiff.

As an entity, Plaintiff acts through its representatives. Mr. Schwartz signed the Lease and all amendments on behalf of Plaintiff. [Complaint, Exhibits A-1 through A-5.] The signature block on each of the Lease Amendments describes Mr. Schwartz's relationship to Plaintiff and the basis for his authority to execute legal documents (and verify the Complaint) on behalf of Plaintiff:

**LANDLORD:**

**1500 NET-WORKS ASSOCIATES, L.P.**,
a Delaware limited partnership

By: 1500 Spring Garden GP LLC, a Delaware limited liability company, its general partner

By: The Nightingale Group LLC, a New York limited liability company, its manager

By:______________________
Name: Elchonon Schwartz
Title: Manager

Consequently, the Complaint is verified by Plaintiff (through its authorized representative, Mr. Schwartz).

### 5. EEF's allegation that there is no default on the rent because there is a subtenant

EEF alleges that there is no default on rent because a sublease was in

place and Plaintiff was "receiving the full monthly rent payment due on the Lease from the subtenant, Harrisburg University." [EEF's Memorandum of Law, pp. 11, 19, 20.] As shown by the Consent to Sublease attached to EEF's Motion to Vacate, the sublease was for only a portion (7,844 square feet) of the space leased by Hussian (32,771 square feet). Moreover, the subtenant paid rent to Hussian, not Plaintiff, and when Hussian ceased paying rent, it was not passing along the rent it received from the subtenant. [Schwartz Declaration (Exhibit 12), ¶ 6.] Consequently, the claim that Hussian owed $447,867.31 in past-due rent at the time the Lease was terminated is accurate, notwithstanding the sublease. [Id., ¶ 8.]

The Hussian Lease expressly allowed Plaintiff to re-let the premises after a default by Hussian and makes Hussian liable for any shortfall in what is paid by the replacement tenant. [Complaint, Exhibit A-1 (Lease), ¶ 21(a)(3).] After Plaintiff filed this action, it entered into a lease with Harrisburg University for the entire space leased to Hussian. [Schwartz Declaration, ¶ 10.] However, the lease with Harrisburg University is for a shorter period of time (August 31, 2025 vs. April 30, 2030) and less rent and includes concessions that were necessary to secure the new lease. [Id., ¶¶ 11-15 and attached calculation of the shortfall between the Harrisburg lease (assuming full performance through August 31, 2025) and the Hussian Lease.] While Hussian (and defendants here) will ultimately be given a credit against the judgment for whatever Plaintiff actually

receives from the new tenant, the new lease is not a defense on the merits to the claim against EEF and is not even a complete defense on the calculation of damages.[6]

**B. The Default Was The Product Of EEF's Culpable Conduct**

The conduct of EEF and the Figuli defendants is a textbook example of culpable conduct leading directly to entry of a default judgment. As was established above, Plaintiff was unsuccessful in its attempts to make service:

- by certified mail at the Colorado address listed for EEF in its Lease Guaranty (because the certified mail package could not be delivered and EEF ignored the USPS's notice about picking up the package);
- by personal service at the Colorado address after the process server determined that personal service could not be made there;
- at the San Jose, California address that Joshua Figuli (EEF's manager) listed as his residence in the Rule 7.1 statement he submitted in the EDNY Action (because the process server determined that Mr. Figuli had sold that property in 2021); and
- by acceptance of service on the attorney for the Figulis in the EDNY Action (as that attorney advised he was not authorized to accept service after consulting with the Figulis).

---

[6] The same is true for EEF's allegation that Plaintiff did not account for a $180,000 draw on a letter of credit. [EEF's Memorandum of Law, p. 11.] Even if the allegation ultimately is proven, it would not be a defense on the merits against Plaintiff's claim and would only provide a reduction in the amount of damages due to Plaintiff as a result of Hussian's default on its Lease.

Plaintiff, however, did effect service on EE's registered agent in Delaware. Pennsylvania law permits service of process on an entity by service on its registered agent (Pa. R.C.P. 424(3); 246 Pa. Code § 310).

EEF attempts to counter these facts with the Declaration of David Figuli. Mr. Figuli, an attorney, declares under penalty of perjury that "EEF was not personally served with the Complaint" but instead was served by publication in the *Philadelphia Inquirer*. These declarations are false.

Mr. Figuli further declares that "EEF did not become aware of this action until the individuals also named as Defendants became aware of the suit." [D. Figuli Declaration, ¶ 7.] EEF became aware of this action on January 26, 2024, when the Complaint was sent to the attorney representing the Figuli defendants in the EDNY Action and that attorney asked his clients if he was authorized to accept service.

The bottom line is that EEF was properly served with the Complaint and chose to ignore it. The default judgment that ultimately followed was the direct result of EEF's (and the individual defendants') culpable conduct. [7]

[7] As detailed in Plaintiff's Motion for Special Service of Process on Defendants Joshua Figuli and David Figuli, filed on April 24, 2024, Plaintiff went to extreme lengths in attempting to serve the individual defendants and all such attempts failed, prompting the Court of Common Pleas to permit service by alternative means. The only realistic conclusion from this experience is that the Figulis were doing their best to avoid service of process in lawsuits stemming from Hussian's demise.

## CONCLUSION

EEF has not come forward with "allegations [which,] if established on trial, would constitute a complete defense to the action." $55,518.05 in U.S. Currency, 728 F.2d at 195 (emphasis added). Thus, EEF has not established the "threshold question" for vacating a default judgment - - a meritorious defense. Id. This factor therefore "weighs strongly in favor of not setting aside the default judgment." Trustees of the Nat'l Electrical Benefit Fund v. Mirarchi Bros., Inc., Civ. Action No. 21-4399-KSM, 2021 WL 5835976, *3 (E.D. Pa. Dec. 8. 2021).

Moreover, the default judgment plainly was the product of EEF's culpable conduct, and the only "excuse" that EEF proffers is based on demonstrably false statements in the Declaration of David Figuli. This creates no excuse, and "for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative." E. Elec. Corp. of N.J. v. Shoemaker Const. Co., 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009). Thus, "this factor also weighs in favor of not setting aside the default judgment." Nat'l Electrical Benefit Fund, 2021 WL 5835976, *4.

Taken together, these factors dictate that EEF's Motion to Vacate Default Judgment be denied. [8]

[8] Courts sometimes consider a fourth factor - - whether "alternative sanctions" would be effective. EEF did not address this factor, and it therefore weighs against setting aside the default judgment. See, e.g., Laborers District Council

Respectfully submitted

**COZEN O'CONNOR**

Dated: July 23, 2024

By: Robert V. Dell'Osa

Robert V. Dell'Osa (#44281)
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-2745
rdellosa@cozen.com

*Attorneys for Plaintiff*
*1500 NET-WORKS ASSOCIATES, L.P.*

*Of Counsel:*

Kenneth W. Eng
*(Admitted in New York and New Jersey only)*
COZEN O'CONNOR
3 World Trade Center
175 Greenwich Street, 55th Floor
New York, New York 10007
(212) 908-1357|KEng@cozen.com

---

Construction Ind. Pension Fund v. Miniscalco Corp., Civ. Action No. 20-5745-KSM, 2023 WL 2989953, * 7 (E.D. Pa. April 18, 2023)(factor weighs against setting aside default judgment where not addressed by defendants).

## CERTIFICATE OF SERVICE

I, Robert V. Dell'Osa, hereby certify that July 23, 2024, a true and correct copy of the foregoing Memorandum of Law in Opposition to Education Equities Fund, LLC's Motion Vacate Default Judgment was served upon counsel of record via electronic filing and is available for viewing and download from the Court's ECF system.

*/s/ Robert V. Dell'Osa*
Robert V. Dell'Osa